```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JAMIE DERRICA,                                              :
                                                            :
                              Plaintiff,                    :
                                                            :         21-CV-8820 (VSB)
              - against -                                   :
                                                            :         OPINION & ORDER
                                                            :
TURA, INC.,                                                 :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

Appearances:

Kenneth Andrew Goldberg
Goldberg & Fliegel LLP
New York, New York
*Counsel for Plaintiff*

Martin Oliver Cabrera Fojas
Wendy Johson Lario
Greenberg Traurig, LLP
Florham Park, New Jersey
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

This is an employment dispute filed by Plaintiff Jamie Derrica ("Plaintiff") and removed from the New York Supreme Court. (*See* Doc. 4.) Now before me is Plaintiff's motion to remand. (Doc. 11.) Because I find that Defendant has carried its burden of showing complete diversity of citizenship, the motion is DENIED.

### I. Factual Background and Procedural History

On September 27, 2021, Plaintiff, a citizen of New York, filed a complaint against her former employer, Defendant Tura, Inc. ("Defendant" or "Tura") in the Supreme Court, County

of New York, alleging that Tura failed to pay her salesperson's compensation in violation of the New York Labor Law and the employment contract. (*See* Doc. 4 Ex. A ("Compl.").) On October 29, 2021, Defendant removed the case to this Court by filing a notice of removal.[1] (Doc. 4 ("Notice").) The only stated ground for removal was diversity of citizenship jurisdiction; Defendant does not challenge that Plaintiff is a citizen of New York, but alleges that Tura is a citizen of Pennsylvania, not New York. (Notice ¶ 5.) On December 6, 2021, Plaintiff filed the instant motion to remand, along with supporting documents. (Docs. 11–13.) Defendant filed its opposition to the motion to remand on December 31, 2021. (Doc. 16.) Plaintiff filed her reply with supporting documents on January 17, 2022. (Docs. 17–19.)

On April 14, 2022, I held a conference with the parties. During the conference, I asked Defendant to respond to certain statements Plaintiff made for the first time in her reply affidavit to Tura's opposition to the motion for remand, (Doc. 19 ("Reply Aff")). Specifically, I asked Defendant to respond to Plaintiff's statements that Tura's top-level executive officers are located in New York City and that the office in Muncy, Pennsylvania is merely a "back office" with support functions, (*see* Reply Aff. ¶¶ 17, 21). I also asked Defendant to explain why, in another federal action where Tura was a defendant, *Weinberg v. Tura, Inc.*, 12 Civ. 11555 (D. Mass 2012) ("*Weinberg*"), Tura stated, as grounds for removal, that it was a citizen of New York, (*see* Doc. 18 Ex. 2, at 3). Pursuant to my order after the conference, (Doc. 26), Defendant filed a sur-reply to Plaintiff's reply, (Doc. 27 ("Sur-reply")).

## II.   **Discussion**

### A.  *Legal Standard*

"[A]ny civil action brought in a State court of which the district courts of the United

---

[1] The notice of removal was first filed on October 28, 2021, but was rejected due to a filing error. (Doc. 1.)

States have original jurisdiction, may be removed by the defendant of the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  District courts have original jurisdiction where the parties are "citizens of different States" and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Therefore, "the party seeking to invoke jurisdiction under 28 U.S.C. § 1332(a) bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete."  *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (internal quotation marks omitted).  Consequently, on a motion to remand, the burden of showing complete diversity falls on "the party seeking to sustain the removal, not the party seeking remand."  *Wilds v. United Parcel Serv. Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (citation omitted); *see also United Food & Com. Workers Union, Local 919 v. CenterMark Props Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).  Determination of diversity jurisdiction is based on "the state of facts that existed at the time of filing."  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

Corporations are citizens of every state in which they are incorporated and have their principal places of business.  *See* 28 U.S.C. § 1332(c).  Under the "nerve center" test articulated by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the principal place of business of a corporation is where its "officers direct, control, and coordinate the corporation's activities," usually the corporation's headquarters.  *Id.* at 92–93.  Subsequent courts have recognized that the test "focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed."  *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill*

*Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015); *see also Hertz Corp.*, 559 U.S. at 96 (noting that a nerve center of a company can be located in New York even though "the bulk of [its] business activities visible to the public take place in New Jersey"); *Benchmark Invs., Inc. v. Pavmed Inc.*, 20-CV-10888 (VSB), 2021 WL 5967918, at *2 (S.D.N.Y. Dec. 16, 2021) ("[T]he Supreme Court expected that this test would still find a corporation's principal place of business to be the site of a corporation's functional 'center of overall direction, control, and coordination,' and not simply the site that a corporation formally declares to be its 'principal executive offices,' or merely 'a mail drop box, a bare office with a computer, or the location of an annual executive retreat.'" (citation omitted)).

### B. *Application*

As an initial matter, I note that Tura's statement made in *Weinberg* back in 2012 is not controlling, because what is relevant is the state of facts regarding Tura's business around the time when this action was filed in 2021.[2] *See Grupo Dataflux*, 541 U.S. at 570. Similarly, I decline to afford much weight to Plaintiff's statement regarding Tura's NYC office "during [her] employment," (*see* Reply Aff. ¶¶ 11–18), because she was employed "from about May 2016 to May 3, 2018," (Compl. ¶ 7), nearly three years before this action was filed. As for Tura's promotional materials and public statements where it states that the company is "based in Manhattan," (*see* Mem. 2–3; Reply Aff. ¶ 4),[3] these statements are not dispositive of Tura's nerve center, either. Although such evidence may be instructive, the determination of a

---

[2] As Defendant explains, in 2012, Tura still maintained an office in Great Neck, New York; however, the Great Neck office has been closed since 2014, when the company transitioned the functions of that office to the new location in Muncy, Pennsylvania. (*See* Sur-reply 1.) Plaintiff also admits that Tura's headquarters "prior to 2014 . . . were in New York, in Great Neck, Long Island," (*see* Reply Aff. ¶¶ 9–10), and nothing in Plaintiff's submissions suggests that the existence of the Great Neck office cannot explain Defendant's statement made in *Weinberg* back in 2012.

[3] "Mem." refers to Plaintiff's memorandum of law in support of her motion to remand. (Doc. 12.)

company's nerve center is ultimately based on where the company's activities are actually "direct[ed], control[ed], and coordinate[d]," *Hertz*, 559 U.S. at 96, not how the company advertises itself.[4] *See also Charles v. Slade Indus.*, 19-CV-3013 (NGG) (SMG), 2019 WL 6768659, *1–2 (E.D.N.Y. Dec. 12, 2019) (finding various internet sources where a company indicated or advertised that its headquarters were in New York not sufficient to establish New York as the corporation's nerve center). Similarly, Plaintiff's statements that Tura held training sessions, meetings with clients, and Christmas parties in New York are not controlling, (*see* Reply Aff. ¶¶ 14–15), because even if "the bulk of [Tura's] business activities visible to the public [took] place in" New York County, Tura's nerve center would be in another location if its "top officers direct those activities" from that location. *See Hertz Corp.*, 559 U.S. at 96. For that same reason, Defendant's statements that Tura houses its corporate records in Muncy, (Pasnello Opp. Decl. ¶ 10),[5] that it is headquartered in Muncy for tax purposes, (*id.* ¶ 6), or that the majority of its employees are located in Muncy, (*id.* ¶ 18), are not relevant. *See Benchmark Invs.*, 2021 WL 5967918, at *2 ("[C]ourts have found irrelevant the situs of things like 'strategic meetings,' 'tax filings,' and 'corporate records,' since what matters is the situs from where the corporation's high-level officers and directors 'oversee and control' corporate activities." (citations omitted) (collecting cases)); *Zurich Am. Life Ins. Co. v. Nagel*, 20-cv-11091 (JSR), 2021 WL 3077861, at *3 (S.D.N.Y. July 20, 2021) (finding that the location of the majority of employees and the domicile stated in the company's marketing materials and tax forms were immaterial for the purpose of determining its nerve center).

---

[4] As Defendant explains, Tura highlights its New York presence in marketing materials "[d]ue to the fashion industry's focus on New York City." (Pasnello Opp. Decl. ¶ 20.) *See infra* note 5.

[5] "Pasnello Opp. Decl." refers to the declaration of Michael Pasnello filed by Defendant in opposition to Plaintiff's motion to remand. (Doc. 16 Ex. 1.)

Accordingly, I look to the remaining statements from the parties to determine "where the lion's share of corporate decisionmaking and direction occurs at the time a lawsuit is initiated," *Benchmark Invs.*, 2021 WL 5967918, at *2. Scott Sennett, as the company's President and Chief Executive Officer ("CEO"), directly supervises six executives/top-level managers, two of whom work from New York, two work from Pennsylvania, one from California, one from Florida. (Sennett Decl. ¶ 3.)[6] It is worth noting that four of these executives/top-level managers, in addition to Scott Sennett himself (for much of his time), work remotely from home. (*Id*. ¶¶ 3–5.) The Supreme Court has opined that the nerve center test can be "hard" to apply in cases, like here, involving "telecommuting," where "corporations may divide their command and coordinating functions among officers who work at several different locations." *Hertz*, 559 U.S. at 95–96. "This difficulty is surely even more compounded in the post-COVID-19 era, when substantially more employees telecommute." *Colmenares v. Paedae, Inc.*, Case No. CV 21-5221-DMG (KSx), 2021 WL 4934976, at *4 (C.D. Cal. Oct. 22, 2021). Still, the test requires the court to "pick out the 'main, prominent' or 'leading' place." *Hertz*, 559 U.S. at 93. Upon examining the evidence submitted by the parties, I find that such a place for Tura is Muncy.

Tura has two corporate officers: Scott Sennett, the President and CEO, and Michael Pasnello, the Vice President of Operations, Chief Financial Officer, Corporate Secretary, and Treasurer. (Pasnello Opp. Decl. ¶ 1, 12). Scott Sennett typically works from his home office in Connecticut, while occasionally travelling to the NYC office—no more than once a week at the time this suit was filed. (Sennett Decl. ¶ 4–5.) Although Sennett travels to Muncy no more than two days per quarter,[7] he conducts business calls with Pasnello twice a day, who takes these calls

---

[6] "Sennett Decl" refers to the declaration of Scott Sennett filed by Defendant in its Sur-reply opposing Plaintiff's motion to remand. (Doc. 27 Ex. 2.)

[7] Sennett explains that he typically worked for two days per quarter from Muncy before the COVID-19 pandemic, but had been spending much more time working from his home office in Connecticut since the pandemic started;

6

from Muncy. (*Id.* ¶ 4–6). Sennett makes these calls from wherever he happens to be working on any given day: from his home office in Connecticut, from the New York office, or on the "road" if he is travelling for business. (*Id.*) However, when he is in Muncy, Sennett meets with Pasnello in person. (*Id.*)

On the other hand, Pasnello works exclusively from Muncy, (Pasnello Sur-reply Decl. ¶ 3),[8] where he directly supervises the managers of each of Tura's operations, finance, and administrative departments, all of whom, as well as their respective departments, are located in Muncy. (*Id.* ¶ 4–5.) Admittedly, a portion of these operations are "day-to-day activities" like distribution and customer service, but what matters is that Muncy is the place where Michael Pasnello "direct[s], control[s], and coordinate[s]" these activities, *Hertz*, 559 U.S. at 96. On balance, the Muncy office exercises greater decisionmaking authority than does the New York office, as the New York office only houses Tura's design and marketing team. (Pasnello Sur-reply Decl. ¶ 6.) To be sure, design and marketing may be an important part of Tura's business, but that does not make New York the nerve center of Tura, given that "the lion's share of corporate decisionmaking and direction" takes place in Muncy. *See Benchmark Invs.*, 2021 WL 5967918, at *2. Moreover, Defendant explains that the design and marketing team in New York report to Jennifer Coppel, Vice President of Brand Management, who works in the New York office, (Pasnello Sur-reply Decl. ¶ 7), and is supervised by Sennett, (Sennett Decl. ¶ 3). Members of the New York team do not directly supervise any employee in Muncy. (Pasnello Sur-reply Decl. ¶ 7.) This is confirmed by the list of "executives and managers" working from

---

around September 2021, when this action was filed, the COVID-19 restrictions in the New York City were partially relaxed and he was gradually starting to work more in New York and resume his regular business travel. (Sennett Decl. ¶ 4–5.)

[8] "Pasnello Sur-reply Decl." refers to the declaration of Michael Pasnello filed by Defendant in its Sur-reply opposing Plaintiff's motion to remand. (Doc. 27 Ex. 1.)

New York provided by Plaintiff, where most of the people on the list belong to either the brand management team or the design/product development team. (*See* Reply Aff. ¶ 17.) In other words, New York cannot be Tura's nerve center because both its function and the number of the executives/top-level managers it houses are limited; Muncy, Pennsylvania, the place where Michael Pasnello directs the various corporate departments housed there, is Tura's principal place of business. *See Colmenares*, 2021 WL 4934976, at *4 (finding that the company's principle place of business is in Ohio, even though its CEO does not work from there, because the "Ohio office is home to a plurality of its officers with strategic, decision-making, and financial authority").

Accordingly, I find that Defendant has met its burden of showing complete diversity of citizenship.

### III. Conclusion

For reasons above, Plaintiff's motion to remand is hereby DENIED. The stay imposed pursuant to my previous order, (Doc. 25), is hereby lifted, and Plaintiff shall file her answer to Defendant's counterclaim on or before May 25, 2022.

SO ORDERED.

Dated: May 5, 2022
　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　Vernon S. Broderick
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge